ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
FRANK OWENS,                              :

               Plaintiff,      :

    - against -                      :
                             08 Civ. 8414 (WCC)
GAFFKEN & BARRIGER FUND LLC; G&B          :      **ECF CASE**
PARTNERS, INC.; BARRIGER CAPITAL, LLC;
BRIDGEVILLE MANAGEMENT, LLC; LLOYD        :
VERNON BARRIGER; and ANDREW McKEAN,
                                          :
               Defendants.     :
- - - - - - - - - - - - - - - - - - - - - X
MARTHA GRAHAM, MARIA GRIMALDI, LLOYD      :
HELLER, PAULA MANZOLILLO and CREAMTON
MAPLE TRUST f/b/o CARL MILLS,             :      08 Civ. 9357 (WCC)
                                                 **ECF CASE**
               Plaintiffs,     :

    - against -                      :

LLOYD V. BARRIGER; THE ESTATE OF ANDREW   :
McKEAN; LINDA BARRIGER; THE GAFFKEN &            **OPINION**
BARRIGER FUND LLC; G&B PARTNERS, INC.;    :      **AND ORDER**
BARRIGER AND BARRIGER INC.; BARRIGER
CAPITAL INC.; GITLIN & ASSOCIATES, LLP;   :
JOHN DOE; and IRWIN GITLIN,
                                          :
               Defendants.     :
- - - - - - - - - - - - - - - - - - - - - X


**A P P E A R A N C E S :**

                          LAZARE POTTER & GIACOVAS LLP
                          **Attorneys for Plaintiff**
                           **Frank Owens**
                          950 Third Avenue
                          New York, New York 10022


ROBERT A. GIACOVAS, ESQ.
LAINIE E. COHEN, ESQ.

       Of Counsel

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

COPIES MAILED TO COUNSEL OF RECORD

A P P E A R A N C E S :   (continued)

                                 LAW OFFICE OF RONALD J. LITCHMAN
                                 **Attorneys for Plaintiffs**
                                   **Martha Graham, Maria Grimaldi,**
                                   **Lloyd Heller, Paula Manzolillo**
                                   **and Creamton Maple Trust f/b/o**
                                   **Carl Mills**
                                   96 North Main Street
                                   Liberty, New York 12754

RONALD J. LITCHMAN, ESQ.

        Of Counsel

                                   K&L GATES LLP
                                   **Attorneys for Defendant**
                                   **Gaffken & Barriger Fund LLC**
                                   1601 K Street, NW
                                   Washington, DC 20006

RICHARD A. KIRBY, ESQ.
LISA M. RICHMAN, ESQ.

        Of Counsel

                                   KLESTADT & WINTERS, LLP
                                   **Attorneys for Defendants**
                                   **Lloyd V. Barriger, G&B Partners,**
                                   **Inc. and Bridgeville Management,**
                                   **LLC**
                                   292 Madison Avenue, 17th Fl.
                                   New York, New York 10017

TRACY L. KLESTADT, ESQ.
JOHN E. JURELLER, JR., ESQ.

        Of Counsel

**CONNER, Senior D.J.:**

Plaintiff, Frank Owens ("Owens plaintiff"), sues Gaffken & Barriger Fund, LLC (the "Fund"); G&B Partners, Inc. ("G&B"); Barriger Capital, LLC ("Barriger Capital"); Bridgeville Management, LLC ("Bridgeville"); Lloyd Vernon Barriger ("L.V. Barriger"); and Andrew McKean ("McKean").  In a separate but related action, plaintiffs, Martha Graham, Maria Grimaldi, Lloyd Heller, Paula Manzolillo and Creamton Maple Trust f/b/o Carl Mills ("Graham plaintiffs" and, together with Owens plaintiff, "plaintiffs"), sue L.V. Barriger; the Estate of McKean; Linda Barriger ("L. Barriger"); the Fund; G&B; Barriger and Barriger, Inc. ("B&B"); Barriger Capital; Gitlin & Associates, LLP ("Gitlin & Assocs."); and Irwin Gitlin ("Gitlin" and, together with the Fund, G&B, Barriger Capital, Bridgeville, L.V. Barriger, McKean, the Estate of McKean, L. Barriger, B&B and Gitlin & Assocs., "defendants").  Each plaintiff alleges that the defendants that they sue fraudulently misrepresented the risk of investing in the Fund.  Plaintiffs now, jointly, move for the appointment of a receiver to assume control of the Fund.  For the reasons stated herein, plaintiffs' motion is denied.

## BACKGROUND

Owens plaintiff seeks compensatory and punitive damages for what he alleges was defendants' fraudulent conduct in describing the Fund to him as a "safe, conservative, highly liquid investment, something 'like a money market account,' with a '*personally guaranteed* 8% return,'" when the Fund, in fact, "turned out to be a highly leveraged real estate [fund] dedicated to lending money to high-risk borrowers." (Owens Complt. ¶¶ 12-13 (emphasis in original).)  Owens plaintiff also alleges that defendants "failed to disclose that they were intimately connected with the [Fund]

1

. . . and were in fact being paid by the [Fund] for their services on its behalf." (*Id*. ¶ 14.)  Graham plaintiffs make similar allegations and add that, while defendants acknowledged that the "Fund was suitable only for highly sophisticated and experienced investors, having high levels of income and net worth, in fact, defendants solicited and accepted investments from [Graham] plaintiffs, none of whom was a qualified investor." (Graham 1st Am. Complt. ¶ 7.)  Graham plaintiffs also allege a more widespread fraud that involves the Fund's broker-dealer and the Fund's accounting firm.  (*See id*. ¶¶ 10, 17.)

According to plaintiffs, on March 5, 2008, they learned that the Fund had become "completely illiquid," owing, in part, to "the 'global credit crunch.'" (Owens Complt. ¶¶ 28-29.) Plaintiffs aver that since the date on which redemptions were initially frozen to the present, defendants have engaged and are engaging in self-dealing, have treated and are treating certain insiders preferentially and have allowed and are allowing selective withdrawals of funds by favored parties.  (*See* Pls. Mem. Supp. Mot. Receiver at 2-9.)  Plaintiffs also argue that L.V. Barriger "controlled the fraudulent scheme" and, therefore, has "substantial conflicts of interest" with respect to his ongoing control over the liquidation of the Fund.  (*Id*. at 2-3.)  Plaintiffs now move for a receiver "to ensure that the Fund will not dissipate assets [which dissipation] could frustrate the [p]laintiffs['] ability to collect on any judgment that may be rendered in their favor." (*Id*. at 14.)

## DISCUSSION

A federal court has the power, in equity, to appoint a receiver to protect a party's interest in property "where the rights over that property are in dispute." *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000), citing Fᴇᴅ. R. Cɪᴠ. P. 66; *see also Rosen v. Siegel*, 106 F.3d 28, 33-34

(2d Cir. 1997).  The appointment of a receiver is an extraordinary remedy, "usually imposed only where no lesser relief will be effective." *Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir. 1961). Courts employ this provisional, equitable remedy sparingly, "[i]nasmuch as a receivership may interfere seriously with defendant's property rights by ousting him or her from control, and sometimes even possession," and require the party seeking the appointment of a receiver to "show that he or she has some legally recognized right in that property that amounts to more than a mere claim against defendant." 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (2009).

Plaintiffs' claims are, principally, legal in nature; plaintiffs seek compensatory and punitive damages based on defendants' alleged misrepresentations of the risk associated with investing in the Fund.  It is foundational to the principles of preliminary relief that such relief may only take the form of that relief which may ultimately be granted.  *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (Preliminary equitable relief should not be granted as a method of providing security for an anticipated money judgment.).  Therefore, ordinarily, a party who brings only legal claims is not entitled to equitable relief, such as the appointment of a receiver.  *See, e.g.*, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 310, 312 (1999).

Plaintiffs do make one equitable claim in each Complaint, a claim for unjust enrichment, in addition to their legal claims.[1]  Based on that claim, we have the *authority* to grant preliminary equitable relief, however, we find that the appointment of a receiver is not an appropriate form of preliminary equitable relief based on the specific claims made in this case.  We have carefully

---

[1]  The Owens Complaint also, originally, made an equitable claim for the imposition of a constructive trust; however, Owens plaintiff withdrew that claim in a letter to this Court, which we "so ordered" on March 9, 2009.

reviewed both Complaints and all of the materials submitted in support of this motion and have found no justification for the appointment of a receiver other than for the improper purpose of "ensur[ing] that the Fund will not dissipate assets [which dissipation] could frustrate the [p]laintiffs['] ability to collect on any judgment that may be rendered in their favor."  (Pls. Mem. Supp. Mot. Receiver at 14); *see also Grupo Mexicano*, 527 U.S. at 310, 312 (Even where defendant's "only substantial asset" was in danger of dissipation, the district court had no power to prevent defendant from transferring assets that may ultimately be used to satisfy a money judgment); *and Tang Capital Partners, LP v. Cell Therapeutics, Inc.*, 591 F. Supp. 2d 666, 671 (S.D.N.Y. 2008) (explaining that "*Grupo Mexicano* stands for the proposition that a plaintiff who has sued for a completed breach of a contract cannot 'secure' the money judgment to which he may someday become entitled by 'holding up the money,' as it were, through an injunction against any transfer").

Further, while plaintiffs make a number of serious allegations of serious impropriety against defendants arising out of defendants' current management of the Fund, plaintiffs make these allegations only in support of their joint motion for a receiver and their argument that funds are in danger of dissipation; these allegations do not appear in either Complaint and no claim for permanent relief is premised on this conduct.  (*Compare* Owens Complaint *and* Graham 1st Am. Complaint *with* Pls. Mem. Supp. Mot. Receiver at 8-12.)  This is significant because plaintiffs are suing on the basis of what they allege is a completed fraud – that is, the alleged fraud in inducing them to invest in the Fund by misrepresenting the Fund's inherent risks.  The alleged impropriety relating to the Fund's current liquidation forms no basis for the relief sought in either the Owens Complaint or the Graham First Amended Complaint.  *Cf. Tang*, 591 F. Supp. 2d at 672 (granting preliminary equitable relief to prevent defendant from consummating a transaction that would violate plaintiff's alleged

contractual rights so that the preliminary relief served to "prevent defendant from becoming liable to [plaintiff] for money damages," while taking care to note that plaintiff was "not trying to secure assets in order to satisfy a judgment for money damages"). Unlike *Tang*, here, even if defendants do engage in improper conveyances during the liquidation process, plaintiffs make no claim for relief based on such potentially fraudulent conduct and have made no representation to the Court that they intend to do so.

Moreover, even if the Graham First Amended Complaint or Owens Complaint did make claims for relief that would render imposition of a receiver *permissible*,[2] the situation presented is not one of the rare instances in which the extraordinary preliminary relief of appointing a receiver to assume control of the Fund would be warranted.

It is undisputed that there is significant oversight of the liquidation of the Fund by non-defendant entities. In August of 2008, the Fund hired Fast4ward Capital Group, Inc. ("Fast4ward") to "advise it in connection with its workout of non-performing loans . . . [and] to review the Fund's portfolio, advise it on how to maximize the value of the individual investments, and oversee the execution of a value-maximizing plan for each asset." (Defs. Mem. Opp. Mot. Receiver at 9-10.) Fast4ward "has had complete access to the Fund's books and records and Fund management." (*Id*. at 10.) In September of 2008, the Fund also retained "Firestorm," a legal consulting firm that provides "crisis and litigation management support" and has focused on "reducing the overall litigation costs to the Fund." (*Id*. at 11.) In addition to these two entities, the Fund also has a secured creditor, Textron, who oversees the Fund's finances and is provided with numerous monthly

---

[2]  The Court has already granted Graham plaintiffs permission to amend their First Amended Complaint again; Graham plaintiffs did not answer the Court's inquiry as to whether they intended to add causes of action.

statements of the Fund's expenditures.  (*Id*. at 11-12.)  Plaintiffs aver that their interests differ from the interests of Textron, stating that "Textron is a private lender that is concerned only with recovering its loan.  Whether any of the equity investors ever see their money is of no concern to Textron."  (Pls. Mem. Supp. Mot. Receiver at 12.)  It is unclear from plaintiffs' argument how Textron's interest is different from their own.  Of course, the ultimate relief that Textron seeks is different from that sought by plaintiffs inasmuch as Textron seeks recovery of the money owed to it and plaintiffs seek recovery of the money owed to them.  Still, the means to achieve both ends is the same: efficient maximization of the value of the assets now under management by the Fund.

Plaintiffs suggest that the sufficiency of outside oversight over the Fund "is an assertion lacking any solid evidence" (Pl. Owens Reply Mem. Supp. Mot. Receiver at 14), however, defendants' assertion that the oversight is sufficient is supported by sworn declarations, whereas plaintiffs' assertion that the current oversight is insufficient is supported only by conclusory allegations and speculation.  The appointment of a receiver is an extraordinary remedy and one that we will not grant on the basis of mere speculation.  *See Ferguson*, 288 F.2d at 674 (Absent unusual circumstances, "[i]t would ordinarily be presumed that a 'watchdog' over all expenditures should be sufficient to safeguard the corporate treasury from further depredations.").

In *Ferguson*, the Second Circuit, affirming a district court's appointment of a receiver, noted that the district court initially denied the plaintiff's motion for a receiver and the "point . . . [that] precipitated the appointment . . . was the arrest of virtually all high [corporate] officials" as the arrests presented "a situation where there was a possible complete breakdown of the [] high command."  *Id*. at 675.  Thus, in spite of serious allegations of fraudulent conduct on the part of defendants, the district court refused to appoint a receiver until the arrests and the resulting potential

6

breakdown of the fund management tipped the balance in favor of a receiver. *Id*. This case is not like *Ferguson*. There are no pending criminal charges arising out of defendants' conduct of which this Court is aware and there are at least three non-defendant entities overseeing the Fund. This case presents little danger of a management breakdown.

Perhaps most importantly, the appointment of a receiver is not appropriate in this case because the majority of investors in the Fund object to such an appointment. The Fund sent notice of the plaintiffs' motion for a receiver to all investors and held a meeting on January 29, 2009, during which defendants briefed over 65 investors and creditors on the status of the Fund and the implications of appointing a receiver; the Fund also mailed a summary of that meeting to all investors, including those who could not attend the meeting. (Defs. Mem. Opp. Mot. Receiver at 12-13.) In response, 55 Fund investors have provided sworn statements opposing the appointment of a receiver. (*Id*. at 13.) According to defendants, "[t]hose investors opposed to a receivership substantially outnumber [p]laintiffs" and defendants "know[] of no investor[s] who support[] receivership" other than plaintiffs. (*Id*.)

Plaintiffs do not dispute that they are the only investors in the Fund who support a receivership. Rather, plaintiffs aver that the other investors did not make an informed decision and were unduly influenced by defendants. (*See* Grimaldi Aff. ¶¶ 4-24.) Plaintiffs also point to the fact that five of the 55 investors who oppose a receivership are in "different economic circumstances from us plaintiffs," for example including a radio station owner, a client of the Fund's law firm, a publisher of a newspaper, a retired lawyer, a sponsor of L.V. Barriger's "motorcycle racing hobby" and a founder of a bank who also sat on a board of directors with L.V. Barriger. (*Id*. at ¶¶ 19-24.) Plaintiffs have not demonstrated how the backgrounds of these five investors gives them any

7

different or diminished interest in preserving the assets of the Fund.[3]  Rather, plaintiffs submit only the unremarkable position that they disagree with the investors who oppose a receiver.

We will not use our equitable powers to resolve a dispute among investors in favor of a minuscule minority.  To do so would override the express wishes of an overwhelming majority of investors against whom plaintiffs make no claims of fraud or impropriety and all of whom, like plaintiffs, have assets in the Fund that they hope to recoup at maximum value.

## CONCLUSION

For the foregoing reasons, plaintiffs' joint motion for a receivership (Owens Doc. #12 & Graham Docs. #20 & #21) is denied.

SO ORDERED.

Dated:  White Plains, New York
        March 23, 2009

Sr. United States District Judge

---

[3]  Even if we discount the opinions of these five investors, at least fifty investors who oppose receivership remain and far outnumber the six plaintiffs who support the appointment of a receiver.

8